# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MISSOURI
### WESTERN DIVISION
### AT KANSAS CITY

| | |
|---|---|
| ABUNDANT LIFE BAPTIST CHURCH OF LEE'S SUMMIT, MISSOURI, PLAINTIFF, | |
| vs. | |
| | CASE NO. |
| JACKSON COUNTY, MISSOURI; AND | |
| JACKSON COUNTY HEALTH DEPARTMENT; AND | |
| FRANK WHITE, JR., IN HIS OFFICIAL CAPACITY AS JACKSON COUNTY EXECUTIVE; AND | |
| TROY SCHULTE, IN HIS OFFICIAL CAPACITY AS JACKSON COUNTY EMERGENCY COORDINATOR; AND | JURY TRIAL DEMANDED |
| BRIDGETTE SHAFFER, IN HER OFFICIAL CAPACITY AS HEALTH DIRECTOR OF THE JACKSON COUNTY HEALTH DEPARTMENT; AND | |
| TRUMAN MEDICAL CENTER, INCORPORATED. | |
| DEFENDANTS. | |

## VERIFIED COMPLAINT FOR DECLARATORY JUDGMENT AND INJUNCTIVE RELIEF

1.  This is a pre-enforcement civil rights lawsuit that challenges unconstitutional and unlawful discrimination against religious institutions and persons in orders and plans

issued by Jackson County, Missouri; the Jackson County Health Department, and their leaders.

2.      Like several other Kansas City metropolitan area locations, Jackson County, Missouri, has issued emergency public health orders in response to the threat posed by the novel Coronavirus Disease 2019, (COVID-19).

3.      Under the current order, last amended April 16, 2020, Defendants generally directed businesses within the County to shut down and prohibited unauthorized public or private gatherings outside single households.   The Order made exceptions for "Essential Business" activities.   The current order is available at https://www.jacksongov.org/DocumentCenter/View/6660/Jackson-County-Stay-at-Home-Order (Ex. 1)

4.      Plaintiff, as a religious organization within Jackson County, has made every effort to comply with the current order, including canceling its five weekly corporate worship services in Lee's Summit and Blue Springs; and reducing services other than those activities identified as "Essential Business" activities under the Order, such as social services for disadvantaged persons, and  Plaintiff has offered live-streaming video of its services as a less-desirable alternative for those who cannot attend in person.

5.      On May 6, 2020, Defendants announced that progress had been made under measurable health criteria in Jackson County, stating that many "non-essential" activities could resume starting on and after May 11, 2020.  Accordingly, Defendants issued an "Eastern Jackson County Recovery Plan Phase 1"   ("Plan") document containing relevant limits and guidance concerning resumption of activities on and after May 11, 2020, which is accessible at https://www.jacksongov.org/DocumentCenter/View/6748/Recovery-Plan-Phase-1 (Ex. 2).

6.     The Plan purports that the current order and future related orders are all part of a larger plan or scheme, such that the Current Order, Defendant's Plan, orders to effectuate the Plan, orders to effectuate future phases of the Plan, and Defendants' criteria, guidance, interpretations, and policies related to the plan, all constitute a unified set of laws, orders, guidance, interpretations and policies, responding to the same health emergency and issued under the same legal authority.

7.     In the Plan, Jackson County (and the other Defendants) announced that non-essential Retail Stores, Personal Services, and Restaurants and Bars serving food could reopen to the public if they follow CDC recommended social distancing recommendations, adopt a Social Distancing Protocol, and restrict the number of individuals in a building using formulas based on the facility's occupancy load.

8.     For example, under the new plan, a Retail Store in a building of less than 10,000 square feet will be allowed to use up to 25% of the occupancy load permitted under the applicable building or fire code; while a building with more than 10,000 square feet will be allowed to use up to 10% of the occupancy load permitted under the applicable building or fire code.  *See* Ex. 2 at 8.

9.     Defendants' Plan extends similar square-foot allowances to "Personal Services" businesses and "Restaurants and Bars Selling Food"; it imposes no square-foot limits on "Essential Businesses."

10.     However, Defendants' Plan states that church facilities are subject to  a "Large Gatherings and Social Events" limit, which is only ten people, regardless of the square footage of a meeting facility.

11.     Plaintiff Abundant Life occupies worship sites in Lee's Summit and Blue Springs, Missouri.  Its largest facility has an approved occupancy load of 4,740 persons.  If engaged

in "Retail Sales" or a "Restaurant or Bar" in Phase I, Plaintiff would be able to admit 474 persons to that building while meeting or exceeding the CDC-recommended social distancing.

12.    Because Defendants have classified Plaintiff's "church" activities as "non-essential" and/or "large gatherings or social events," Plaintiff will only be able to admit ten total persons—counting the pastor and staff-- to worship services on May 17, 2020, the first Lord's Day after the May 11, 2020 start of the Plan.  Plaintiff has much more than 10 staff.

13.    Defendants' orders differ from those of Kansas City, Missouri, a municipality that lies (in part) within Jackson County, in that the City of Kansas City permits churches to gather under the square-footage rules.  Defendants Plan purports to apply only to "Eastern Jackson County."   Thus, by allowing more generous square footage  rules in the western part of the County, Defendants cause confusion and further discrimination against Plaintiff because its locations happen to be in eastern Jackson County.

14.    Defendants' orders impermissibly discriminate against religiously-motivated gatherings, and in favor of commercially-motivated gatherings.

15.    On April 14, 2020, United States Attorney General William Barr issued a statement that "the First Amendment and federal statutory law" also prohibit governments from:

> impos[ing] special restrictions on religious activity that do not also apply to similar nonreligious activity. For example, if a government allows movie theaters, restaurants, concert halls, and other comparable places to assemble to remain open and unrestricted, it may not order houses of worship to close, limit their congregation size, or otherwise impede religious gatherings. Religious institutions must not be singled out for special burdens.  [Statement of Attorney General William P. Barr. (Ex. 3)]

16.     In his statement, Attorney General Barr also announced the Department of Justice had filed a Statement of Interest in support of a Mississippi church that allegedly sought to hold parking lot worship services before being criminally cited by local law enforcement. *See id*.; The United States' Statement of Interest in Support of Plaintiffs, 4:20- cv-64-DMB-JMV) (N.D.Miss. 2020) (Ex. 4)

17.     Missouri's Constitution promises that "all men and women have a natural and indefeasible right to worship Almighty God according to the dictates of their own consciences" Art. I, § 5, and that government "shall ensure that any person shall have the right to pray individually or *corporately* in a private or public setting so long as such prayer does not result in disturbance of the peace or disruption of a public meeting or assembly." *Id* (emph. added).

18.     This action includes claims under the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA"), 42 U.S.C. §2000cc; the First and Fourteenth Amendments to the Constitution of the United States through 42 U.S.C. §1983; the Missouri Constitution, Article I, §§ 2, 5, 9 and 10; and the Missouri Religious Freedom Restoration Act, ("RFRA"), §§1.302 and 1.307, RSMo.

19.     The suit seeks declaratory judgment and injunctive relief from this Court as to all Defendants and reasonable attorneys' fees and expenses, in order to remedy the deprivation of the Plaintiff's constitutional and civil rights.

20.     In light of the plain terms of the Plan, Plaintiff and its worshipers faces an imminent and impossible choice: either a) violate their religious beliefs by failing to assemble for corporate worship on the Lord's Day and at other times, and submit to a law that unjustly discriminates against their religion, or b) suffer fines, imprisonment or government-encouraged public shaming, for pastors and people, for following their

religious beliefs by engaging in corporate worship of the Almighty God with as many people as would be allowed in a retail business, restaurant or bar of similar size.

21.     Civil rights litigants such as Plaintiff can challenge restrictions on their rights before Jackson County investigates, fines or incarcerates Jackson County worshipers.

## Jurisdiction & Venue

22.     This Court has subject matter jurisdiction under 28 U.S.C. §1331 and 1343.

23.     The acts in this suit occurred in Jackson County, Missouri, and Defendants reside in Jackson County, so venue is proper here. 28 U.S.C. §1391(b)(2)

24.     This Court has authority to grant the requested declaratory relief. 28 U.S.C. §2201, *et seq*., 42 U.S.C. §2000cc *et seq*.

25.     This Court has authority to issue the requested injunctive relief. Fed.R.Civ.P. 65 and 28 U.S.C. §1343(3).

26.     This Court has supplemental jurisdiction over the state claims under 28 U.S.C. § 1367.

27.     This Court has authority to award the requested damages and fees; 28 U.S.C. §1343(3), 42 U.S.C. § 1988; and 42 U.S.C. §2000cc *et seq*.

## Parties

28.     Plaintiff Abundant Life Baptist Church of Lee's Summit, Missouri, ("Abundant Life") is a Missouri nonprofit corporation, with its principal location at 304 SW Persels Rd, Lee's Summit, Jackson County, Missouri 64081.

29.     Plaintiff's lead pastor is Rev. Phil Hopper.

6

30.    Defendant Jackson County, Missouri, is a county government within the State of Missouri, having adopted a constitutional home rule charter for its governance, pursuant to Article VI, Section 18(a) of the Missouri Constitution.

31.    Defendant Jackson County Health Department is an administrative unit of Jackson County, Missouri, with administrative offices in Independence, Missouri; the Health Department's operations are undertaken by Defendant Truman Medical Center, Incorporated, a Missouri Nonprofit Corporation with its principal place of business in Kansas City, Missouri.

32.    Defendant Frank White, Jr., is the Jackson County Executive, and is sued in his official capacity.

33.    Defendant Bridgette Shaffer is the Jackson County Health Director, and is sued in her official capacity.

34.    Defendant Troy M. Schulte is the Jackson County Administrator and Emergency Management Coordinator, and is sued in his official capacities.

## Allegations Common to All Counts
### Plaintiff Abundant Life

35.    Abundant Life is a Christian church, operating in Lee's Summit, Missouri, in eastern Jackson County.

36.    Under the leadership of pastor Phil Hopper, Abundant Life has grown from a small house-sized church to include multiple sites in Jackson County, including Lee's Summit, Missouri; and Blue Springs, Missouri.

37.    Abundant Life and Pastor Hopper sincerely believe that the Bible is the inspired Word of God and the sole authority for faith and practice, and that the Bible teaches,

among other things, the requirement to gather together for corporate prayer and worship.

38.     Abundant Life's Lee's Summit location includes an auditorium, classrooms, children's educational facilities, youth educational facilities, a counseling center, and a food bank which provides food to needy persons in the community.

39.     On Sundays, Abundant Life's Lee's Summit campus typically has three morning worship services open to the public, and up to 4,500 persons typically attend those services.   Under applicable building and fire codes, the main building can safely accommodate 4,740 individuals.

40.     Abundant Life also operates a Blue Springs location, which also holds Sunday services. Under applicable building and fire codes, Abundant Life's Blue Springs' building can safely accommodate at least 1,490 persons.

41.     Each of Abundant Life's Sunday worship services typically include teaching, prayer, and music performances.

42.     Due to Defendants' current stay at home order, Plaintiff Abundant Life has been unable to meet for worship or corporate prayer as it would normally, and has been unable to offer religious or community services to others on the same basis.

43.     If persons were allowed to enter Abundant Life's property for religious purposes under the 10% rule that applies to Jackson County businesses in Phase 1, Abundant Life could accommodate up to 474 persons and staff at one service.

44.     Abundant Life could host such persons while meeting or exceeding the CDC's social distancing criteria.

45.     Abundant Life wishes to use its facilities for worship and prayer after the expiration or modification of the current stay-at-home order, which has been announced will occur on May 11, 2020.

46.     Thus, Abundant Life wishes to meet for worship services and religious activities on and after May 17, 2020, but would only be able to use its 4,700-person building for ten people at a time.

47.     If Abundant Life were to engage in retail sales, or served food and liquor as a bar, rather than religious worship at its Lee's Summit location, Jackson County's Phase I plan would allow 474 people in the building at a time while meeting or exceeding the CDC's guidelines.

48.     During the week of April 27, 2020, employees of Abundant Life called Defendant Shaffer and requested a meeting to sit-down and talk through potential guidelines and religious liberty concerns; Abundant Life communicated that it desired to be a leader in supporting the community health and to assist in distributing accurate information to other churches who were asking Abundant Life for guidance.

49.     Defendant Shaffer said that her superiors had not yet directed a response, and that Plaintiff could check the County's website for directions as it was approved.

## DEFENDANTS' ACTIONS

50.     Defendants' Plan and orders threaten to continue to deprive Plaintiff, its guests, and its employees of the free exercise of religion, as secured by the First Amendment.

51.     Defendants' Order, policies and practices have imposed a substantial burden on Abundant Life's sincere religious exercise.

52.     Defendants' plan and websites specifically target religious worship as a type of mass gathering, and Defendant's website contains a warning to all visitors that they should "Stay Home Worship Remotely." https://www.jacksongov.org/1188/Stay-Home-Worship-Remotely. Defendants website lists a link to Plaintiff's website where live-stream services are available, but the County does not mention Plaintiff's plans for in-person services after May 11, 2020.

53.     Defendants' emergency orders carry the force of law, and warn that pursuant to §192.300, RSMo., and §192.320, RSMo., violation of the orders is a Class A misdemeanor, subject to fine, imprisonment, or both.

54.     Defendants' Plan, criteria and guidance, purport to be issued pursuant to "the Missouri State Constitution, Statutes, Regulations, the Home Rule Charter, County Code Provisions, including, but not limited to the Missouri Code of State Regulations, Rules of Department of Health and Senior Services (19 CSR 20-20.020; 19 CSR 20-20.030; 19 CSR 20-20.040; 19 CSR 20-20.050) and Jackson County Code Chapter 40."

55.      Defendant's Recovery Plan Phase I makes explains that it will form part of a unified plan of response to the novel coronavirus, and which will expand and contract business openings based on measurable criteria:

> A shift to Phase I will be considered with observable progress on the following four criteria: (1) the number of new cases has declined for at least 14 days; (2) rapid diagnostic testing capacity is sufficient to test, at minimum, all people with COVID-19 symptoms, as well as close contacts and those in essential roles; (3) the healthcare system is able to safely care for all patients, including having appropriate personal protective equipment for healthcare workers; and (4) there is sufficient public health capacity to conduct contact tracing for all new cases and their close contacts. Enough progress on the aforementioned criteria has warranted a shift to Phase I of recovery efforts which will go into effect May 11th, 2020.

Phase II & III will continue to relax restrictions on businesses and activity as fewer mitigation strategies are necessary. Phase IV is the least stringent, and offers a "return-to-normal."

56.     The Phase I restrictions will initially start on May 11, 2020, and will continue through at least May 25, 2020, as the Plan says each phase will last a minimum of 14 days.

57.     Further, the Phase I plan says restrictions are likely to return if there as any recurrence of coronavirus infections:

It is possible to return to a more stringent phase if key criteria are not met or if there is a spike in hospitalizations or deaths. Each phase will last a minimum of 14-days - consistent with the incubation period of SARS-CoV-2.

58.     Therefore, Plaintiff believes the Phase I restrictions represent an ongoing threat to Plaintiff's ability to open its doors for the duration of the coronavirus emergency, or until a vaccine or therapeutic treatment is discovered, which could be several years.

59.     Defendants' actions have already harmed Plaintiff in that Plaintiff is unable to communicate to viewers of its internet stream, its members, and others whether or not it will have in-person services available after May 11, 2020, for a set number of persons in a timely manner. Plaintiff should not be forced to choose between a) violating religious beliefs about corporate worship, or b) risking fines and imprisonment of its worshipers, if Jackson County enforces the plain words of the Plan.

## Abundant Life's Response

60. Defendants' plan was issued on May 6, 2020; on May 7, 2020, Plaintiff sent a demand letter to Defendants, showing that the rules were plainly discriminatory. Plaintiff's letter (at Ex. 5) also explained that in order to communicate with members and the public about services on May 17, 2020, Abundant Life would need

to start communicating at the regular worship streaming time on Sunday, May 10, 2020.

61. Because May 8, 2020 is a State Holiday, Plaintiff asked that the Plan be amended no later than close of business May 7, 2020, or else Plaintiff would be forced to seek emergency relief so that it could give adequate notice and preparation to worshipers about May 17, 2020.

62. Defendants have declined to amend their Plan as of the time of filing.

## The United States Constitution

63.     The First Amendment to the United States Constitution provides: "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the government for a redress of grievances."

64.     The Fourteenth Amendment to the U.S. Constitution provides: "No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

## The Missouri Constitution

65.     Article I, Section 5 of Missouri's Constitution states, in part:

> That all men and women have a natural and indefeasible right to worship Almighty God according to the dictates of their own

consciences; that no human authority can control or interfere with the rights of conscience; that no person shall, on account of his or her religious persuasion or belief, be rendered ineligible to any public office or trust or profit in this state, … or be molested in his or her person or estate; that to secure a citizen's right to acknowledge Almighty God according to the dictates of his or her own conscience, neither the state nor any of its political subdivisions shall establish any official religion, nor shall a citizen's right to pray or express his or her religious beliefs be infringed; that the state shall not coerce any person … but shall ensure that any person shall have the right to pray individually or corporately in a private or public setting so long as such prayer does not result in disturbance of the peace or disruption of a public meeting or assembly … but this section shall not be construed to … excuse acts of licentiousness, nor to justify practices inconsistent with the good order, peace or safety of the state, or with the rights of others.

66.    Missouri's Religious Freedom Restoration Act, §1.302, RSMo. states:

1. A governmental authority may not restrict a person's free exercise of religion, unless: (1) The restriction is in the form of a rule of general applicability, and does not discriminate against religion, or among religions; and (2) The governmental authority demonstrates that application of the restriction to the person is essential to further a compelling governmental interest, and is not unduly restrictive considering the relevant circumstances.2. As used in this section, **"exercise of religion"** shall be defined as an act or refusal to act that is substantially motivated by religious belief, whether or not the religious exercise is compulsory or central to a larger system of religious belief.3. As used in this section **"demonstrates"** means meets the burden of going forward with the evidence and of persuasion.

# COUNT I
## VIOLATION OF THE FIRST AMENDMENT OF THE UNITED STATES CONSTITUTION
## FREE EXERCISE OF RELIGION
## (42 U.S.C. §1983)

67.    Plaintiff incorporates by reference all preceding paragraphs.

68.    The First Amendment of the United States Constitution commands that Congress must make no law "prohibiting the free exercise" of religion.

69.     The First Amendment applies to state and local governments, including these defendants, by virtue of Fourteenth Amendment under the "incorporation doctrine." *Cantwell v. Connecticut*, 310 U.S. 296, 303 (1940).

70.     The Free Exercise Clause binds local subdivisions of the state, such as Jackson County, by operation of the Fourteenth Amendment. *See, e.g. Lovell v. City of Griffin, Ga.*, 303 U.S. 444, 450 (1938).

71.     As a county government or official agents thereof, Defendants must uphold and protect citizens' First Amendment rights.

72.     Defendants' Plan, orders to effectuate the Plan, criteria, guidance, interpretations, policies and practices restricting religiously-motivated gatherings to ten persons substantially interferes with Plaintiff's ability to carry out their religious doctrine, faith and mission.

73.     Congress has provided for challenges to First Amendment violations by government actors. 42 U.S.C. §1983 creates a private right of action against any person who, under color of state law, deprives another of "rights, privileges, or immunities secured by the Constitution." The private right of action includes "an action at law" and a "suit in equity." *Id.*

74.     Defendants' Plan, orders to effectuate the Plan, criteria, guidance, interpretations, policies and practices restricting religiously-motivated gatherings to ten persons, while allowing commercially-motivated gathering of any size (subject to available square-footage) are not justified by a compelling government interest.

75.     Defendant's application of the Plan, orders to effectuate the Plan, criteria, guidance, interpretations, policies and practices to Abundant Life, its employees, and

its guests, is an unconstitutional deprivation of Plaintiff's First Amendment rights, including, but not limited to the Free Exercise of Religion, and to Due Process of law.

76.     Defendants' Plan, orders to effectuate the Plan, criteria, guidance, interpretations, policies and practices violate the Free Exercise Clause of the First Amendment to the United States Constitution, both facially and as applied.

77.     Even if Defendants can assert a compelling government interest in their limitations, the Defendants' interpretation, policies and practices are not narrowly tailored to achieve that interest.

78.     Absent injunctive and declaratory relief against the Plan and Order and Defendants' interpretation, policies and practices, the Plaintiff Abundant Life has been and will continue to be harmed.

## COUNT II
### Violation of First Amendment to the United States Constitution
### Free Speech
### (Facial and as applied challenge)
### (42 U.S.C. §1983)

79.     Plaintiff incorporates by reference all preceding paragraphs.

80.     Defendants' Plan, orders to effectuate the Plan, criteria, guidance, interpretations, policies and practices single out certain religious activity for less favorable treatment than other, similarly situated, non-religious activities.

81.     Defendants have stated that they intend for public pressure to constitute part of the enforcement of the Plan, and so one purpose of by the Plan is to subject "violators" to public shame, ridicule, and other reputational damage, which would have a chilling effect on the targeted speech, including Plaintiff's speech.

82.     No set of circumstances allows Defendant to single out religious activity for less favorable treatment than other, similarly situated non-religious activities.

83.     Defendants' Plan, orders to effectuate the Plan criteria, guidance, interpretations, policies and practices appear to give government officials unbridled discretion with respect to enforcement of the Order and the imposition of penalties, and to determine whether gatherings and activities are to be classified as "retail" or "church" activities, making the Plan susceptible to both content and viewpoint-based discrimination.

84.     Prohibiting or punishing Plaintiff's religiously-motivated speech does not serve any legitimate, rational, substantial, or compelling governmental interest.

85.     Defendants' categories are not even rationally related to the claimed purposes, in that the definitions of "church" and the restrictions applied to churches appear to rest on prejudicial or stereotyped understandings of religious services, and not on the actual safety of the facility or activities within those facilities.

86.     Defendants have substantially burdened or deprived (and continue to deprive) Plaintiff, its guests, members, and employees of the Free Speech as secured by the First Amendment.

87.     Defendants can use alternative, less restrictive means to achieve any interest that it might have.

88.     Defendants' Plan, orders to effectuate the Plan, criteria, guidance, interpretations, policies and practices violate the Free Speech Clause of the First Amendment to the United States Constitution, both facially and as applied.

89.     In the absence of declaratory and injunctive relief, Plaintiff will be irreparably harmed.

## COUNT III
### VIOLATION OF FIRST AMENDMENT OF THE UNITED STATES CONSTITUTION
### FREEDOM OF ASSEMBLY AND ASSOCIATION
### (42 U.S.C. §1983)

90.     Plaintiff incorporates by reference all preceding paragraphs.

91.     The First Amendment to the United States Constitution commands that Congress shall make no law "abridging…the right of the people peaceably to assemble…."

92.     The rights to assemble and associate are a fundamental right, applicable to the states by incorporation by the Fourteenth Amendment.

93.     The rights of assembly and association exists throughout the community, in public and private spaces.

94.     The Defendant's orders, criteria, guidance and policies burden and interfere with Plaintiff's right to assemble and associate with its employees and guests.

## COUNT IV
### VIOLATION OF FIRST AMENDMENT OF THE UNITED STATES CONSTITUTION
### ESTABLISHMENT CLAUSE
### (42 U.S.C. §1983)

95.     Plaintiff incorporates by reference all preceding paragraphs.

96.     The First Amendment to the United States Constitution commands that Congress shall make no law "respecting an establishment of religion…."

97.     The Establishment Clause prohibits government from enacting or enforcing laws in a manner that advances or inhibits religion, or that intentionally discriminates against religion or discriminates between religions.

98.     Defendants' interpretation, policies and practices target religious activity and inhibit religious activity.

99.     Defendants' interpretation, policies and practices have demonstrated bias or hostility against the religious ministry of Plaintiff and have violated the Plaintiff's rights under the Establishment Clause.

## COUNT V
### RELIGIOUS LAND USE AND INSTITUTIONALIZED PERSONS ACT SUBSTANTIAL BURDEN PROVISION
### (42 U.S.C. §2000CC)

100.    Plaintiff incorporates by reference all preceding paragraphs.

101.    The Religious Land Use and Institutionalized Persons Act of 2000 (RLUIPA), prevents the government from imposing a substantial burden on the sincere religious belief of a religious assembly or institution unless the government demonstrates that the burden "is in furtherance of a compelling governmental interest" and "is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. §2000cc(a)(1).

102.    RLUIPA applies whenever (1) the substantial burden "is imposed in a program or activity that receives Federal financial assistance"; (2) the substantial burden "affects, or removal of that substantial burden would affect, commerce…among the several States"; or (3) the substantial burden is "imposed in the implementation of a land use regulation or system of land use regulations, under which a government makes, or has in place formal or informal procedures or practices that permit the government to make, individualized assessments of the proposed uses of the property involved." 42 U.S.C. §2000cc(a)(2).

103. The Plan, orders to effectuate the Plan, criteria, guidance, interpretations, policies and practices of the Defendants constitute the imposition or implementation of a land use regulation that imposes a substantial burden on the Plaintiff's religious exercise; a burden not in furtherance of a compelling governmental interest or the least restrictive means of furthering such interest, in violation of RLUIPA, 42 U.S.C. §2000cc(a)(1).

104. Defendants have made or will make individualized assessments concerning Plaintiff's use of its land under the relevant orders, plans, and guidance, in that Defendants have created categorized acceptable uses of individual property, and categorized particular uses as "essential," or "non-essential," or "retail" or "large gatherings and social events."

105. On April 22, 2020, Defendant Jackson County received funds in the Amount of $122,669,998.30 from the federal government pursuant to Coronavirus Aid, Relief, and Economic Security Act (Pub. L. 116-136), which is to be spent, in part, in funding Defendants' response to the Coronavirus emergency.

106. Defendants' restrictions impose a substantial burden Plaintiff's religious exercise, which affects commerce "among the several States" with respect to the Plaintiff's ability to gather persons for worship, religious activity, to collect donations and to distribute aid to the needy.

107. The County's implementation of a land use regulation under which the County does or will involve individualized assessments concerning the Plaintiff's use of property in Jackson County, Missouri.

108. Defendants' restrictions impose a substantial burden on the Plaintiff's religious exercise, which affects commerce "among the several States" with respect to the

Plaintiff's ability to gather persons for worship, and religious activity, to collect donations; and to distribute aid to because this case arises out of the needy.

109.    Because the County receives federal financial assistance; because the imposition of the substantial burden on the Plaintiff's religious exercise affects commerce "among the several States" with respect to the Plaintiff's ability to gather persons for worship and religious activity; and because this case arises out of the County's implementation of a land use regulation under which the County made individualized assessments concerning the Plaintiff's use of the property in Jackson County, Missouri, RLUIPA's terms are binding in this case.

110.    Defendants have deprived and continue to deprive the Plaintiff of its right to the free exercise of religion, as secured by the Religious Land Use and Institutionalized Persons Act of 2000, 42 U.S.C. §2000cc (RLUIPA).

111.    Defendants are officials for and within Jackson County, with the authority to enforce State and local laws concerning the use of land and structures within its border, and thus are acting under color of state law.

112.    For purposes of RLUIPA, Defendants are a "government." 42 U.S.C. §2000cc-5(4)(A)(i),(ii).

113.    For purposes of RLUIPA, the Plaintiff is a "religious assembly or institution." 42 U.S.C. §2000cc(2)(b)(1).

114.    For purposes of RLUIPA, the Plan, orders to effectuate the Plan, criteria, guidance, interpretations, policies and practices constitute a land use regulation under which a government makes, or has in place formal in informal procedures or practices that permit the government to make individualized assessments of the owner's use of the property involved, and is tied to building codes and fire codes.

115. The Plaintiff's religious exercise includes:

A. Worship services of the Almighty God in a gathered assembly;

B. The offering and provision of ministry to members and the public;

C. The collection and distribution of funds to further religious and charitable purposes;

D. The offering and provision of food and assistance to persons who are food insecure.

E. The offering and provision of help to persons who are in poverty or in danger of being in poverty.

F. The employment of persons consistent with the beliefs and activities of Plaintiff.

G. The use of its employees and its property to offer and provide physical and spiritual help, including, without limitation, preaching, corporate prayer, and other worship.

116. Under the County's Plan, orders to effectuate the Plan, criteria, guidance, interpretations, policies and practices, the Plaintiff's religious exercise has been burdened, in that:

A. It has been forced to cancel or turn away persons from corporate worship services of the Almighty God;

B. It has been forced to reduce ministry to members and the public, or been required to use less effective methods such as internet streaming or drive-in services, which as a matter of faith are not adequate substitutes for in-person corporate worship;

C.  It has been unable to operate or employ staff consistent with the beliefs and activities of Plaintiff.

D.  It has been unable to use its employees and its property to offer and provide physical and spiritual help, including, without limitation, preaching, corporate prayer, and other worship.

117.   Defendants' actions thus violate the Plaintiff's rights as secured by RLUIPA.

## COUNT VI
## RELIGIOUS LAND USE AND INSTITUTIONALIZED PERSONS ACT
## EQUAL TERMS PROVISION
## (42 U.S.C. §2000CC)

118.    Plaintiff incorporates by reference all preceding paragraphs.

119.   RLUIPA provides, in part: "No government shall impose or implement a land use regulation in a manner that treats a religious assembly or institution on less than equal terms with a nonreligious assembly or institution."  42 U.S.C. §2000cc(b)(1).

120.   Defendants have not applied the same interpretations, policies, or practices concerning "large gatherings and social events" to retail businesses, bars and restaurants that, in fact, are large gatherings of customers for commercial purposes.

121.   Defendants have implemented Plan, orders to effectuate the Plan, criteria, guidance, interpretations, policies or practices as a land use regulation in a manner that treats Plaintiff on less than equal terms with nonreligious institutions such as retail businesses, restaurants and bars.

122.   Defendants' Plan, orders to effectuate the Plan, criteria, guidance, interpretations, policies and practices threaten harm, have harmed, and will continue to cause harm to Plaintiff.

## COUNT VII
## RLUIPA
### UNREASONABLE LIMITATIONS PROVISION
### (42 U.S.C. §2000CC)

123.    Plaintiff incorporates by reference all preceding paragraphs.

124.    RLUIPA provides, in part: "No government shall impose or implement a land use regulation that… (B) unreasonably limits religious assemblies, institutions, or structures within a jurisdiction."  42 U.S.C. §2000cc(b)(3)(B).

125.    Defendants' Plan, orders, criteria, guidance, interpretations, policies and practices as applied to Plaintiff operate as a land use regulation, and constitute an unreasonable limitation on the religious assembly and worship rights of Plaintiff; in particular because the orders result in wildly inconsistent limits on churches in different parts of the same County for no legitimate reason.


## COUNT VIII
### MISSOURI RELIGIOUS FREEDOM RESTORATION ACT
### (§1.302, RSMo.)

126.    Plaintiff incorporates by reference all preceding paragraphs.

127.    §1.302, RSMo., (commonly known as Missouri's Religious Freedom Restoration Act) states:

A governmental authority may not restrict a person's free exercise of religion, unless:

1.    The restriction is in the form of a rule of general applicability, and does not discriminate against religion, or among religions; and

2.  The governmental authority demonstrates that application of the restriction to the person is essential to further a compelling governmental interest, and is not unduly restrictive considering the relevant circumstances.

128.  Thus Missouri's RFRA addresses all governmental burdens on free exercise, and not merely substantial burdens on free exercise.

129.  The activities of Plaintiff in holding corporate worship and prayer services are actions substantially motivated by its religious belief.

130.  Defendants' Plan, orders to effectuate the Phase I Plan, criteria, guidance, interpretations, policies and practices, restrict the Free Exercise of Religion of Plaintiff, its employees, and its guests.

131.  Defendants' Plan, orders to effectuate the Plan, criteria, guidance, interpretations, policies and practices restricting religiously-motivated gatherings to ten persons are not rules of general applicability, and discriminate against religion, or among religious groups elsewhere in the County, and among religious groups that believe meeting in person is a religious requirement.

132.  Defendants' policy Plan, orders, criteria, guidance, interpretations, policies and practices, restrict the Free Exercise of Religion of Plaintiff, its employees, and its guests.

133.  Defendant's restrictions are not essential to any compelling governmental interests, as demonstrated by the relaxed criteria and exceptions allowed to Retail Sales, Personal Services, Restaurants and Bars under the Plan.

134.  Defendant's restrictions are unduly restrictive considering the relevant circumstances, including public safety.

135.    As a direct result of Defendants' actions, Plaintiff has suffered harm from the deprivation of its right to religious exercise free from interference guaranteed by law.

## COUNT IX
### VIOLATION OF MISSOURI CONSTITUTION
### (ARTICLE I, SECTIONS 2, 5, 9 & 10)

136.    Plaintiff incorporates by reference all preceding paragraphs.

137.    **Article I, §2** of the Missouri Constitution provides:

That all constitutional government is intended to promote the general welfare of the people; that all persons have a natural **right to** life, **liberty**, the pursuit of happiness and the enjoyment of the gains of their own industry; that all persons are created equal and are entitled to **equal rights and opportunity under the law**; that to give security to these things is the principal office of government, and that when government does not confer this security, it fails in its chief design. (emphasis added)

138.    **Article I, §5** of Missouri's Constitution provides, in part:

That all men and women have a **natural and indefeasible right to worship** Almighty God according to the dictates of their own consciences; that no human authority can control or interfere with the **rights of conscience** … that the state shall not coerce any person to participate in any prayer or other religious activity, but shall ensure that any person shall have the **right to pray individually or corporately in a private or public setting** so long as such prayer does not result in disturbance of the peace or disruption of a public meeting or assembly…. (emphasis added)

139.    **Article I, §9** of the Missouri Constitution provides:

That the people have the **right peaceably to assemble for their common good**, and to apply to those invested with the powers of government for redress of grievances by petition or remonstrance. (emphasis added)

140.     **Article I, §10** of the Missouri Constitution provides: "That no person shall be deprived of life, liberty or property without **due process** of law."

141.     Plaintiff, its guests, and its employees exercise the constitutional rights protected by the foregoing sections of the Missouri Constitution, including the right to corporate worship and prayer on its private property; the right to worship God according to dictates of conscience, the right peaceably to assemble for the common good, the right to liberty, the right to due process, the right to equal protection, and other rights contained in the Missouri Constitution Bill of Rights.

142.     Defendants' Plan, orders, criteria, guidance, interpretations, policies and practices interpretations, policies and practices under the Plan have coerced, interfered with and substantially burdened the exercise of the foregoing rights by Plaintiff Abundant Life.

143.     At all times mentioned herein, Plaintiff Abundant Life and its employees have sought to engage in such activities on the subject premises without any disturbance of the peace or disruption of any public meeting or assembly, or interference with the rights of others.

## Prayer for Relief

144. Plaintiff seeks a declaratory judgment in its favor and against all Defendants on all Counts, as follows:

A. Declare that the Plaintiff's corporate worship services are a religious exercise.

B. Declare Defendant's Plan, orders to effectuate the Plan, criteria, guidance, interpretations, policies and practices are facially unconstitutional in that they single out religious activity for disparate and unfair treatment.

C. Declare Defendant's Plan, orders to effectuate the Plan, criteria, guidance, interpretations, policies and practices are unconstitutional as applied to Plaintiff, its employees, and guests, in violation of the First and Fourteenth Amendments of the U.S. Constitution, under the circumstances herein described.

D. Declare Defendant's Phase I Plan, orders to effectuate the Plan, criteria, guidance, interpretations, and policies violate RLUIPA, including the provisions for substantial burden, discrimination, equal terms, or unreasonable limitations.

E. Declare Defendant's Phase I Plan, orders to effectuate the Plan, criteria, guidance, interpretations, and policies, violate Missouri's RFRA.

F. Declare Defendant's Phase I Plan, orders to effectuate the Plan, criteria, guidance, interpretations, and policies violate the Missouri Constitution, Article I, Sections 2, 5, 9, and 10.

G. Declare Defendant's Phase I Plan, orders to effectuate the Plan, criteria, guidance, interpretations, and policies violate Missouri's Religious Freedom Restoration Act, §1.302, *et seq.*

145. Upon proper motion, Plaintiff seeks a temporary restraining order, a preliminary injunction and a permanent injunction in favor of Plaintiff and against all Defendants, which:

A. Enjoin Defendants from enforcing or threatening to enforce Defendant's Plan, orders to effectuate the Plan, criteria, guidance, interpretations, and policies, against Plaintiff or any others similarly situated, on grounds that the Plan violates the U.S. Constitution, the Missouri Constitution, and state or federal law.

B. Enjoin Defendants from enforcing or threatening to enforce Defendant's Plan, orders to effectuate the Plan, criteria, guidance, interpretations, and policies against Plaintiff, its employees or guests, while they are present on Plaintiff's premises and are engaged in work, religious worship, teaching or assembly, seeking ministry help from Plaintiff, or any other religious purpose.

C. Enjoin Defendants from imposing a substantial burden on religious exercise, unequal terms, discrimination, or unreasonable limitations on the religious exercise of the Plaintiff, its employees, and its members or guests, that are not essential to further a compelling governmental interest; and

1. Require Defendants, theirs officers, employees, agents, successors, and all other persons in concert or participation with them, to take such actions as may be necessary to

restore, as nearly as practicable, the Plaintiff to the position it would have been in but for the Defendants' unlawful conduct; and

2. Require Defendants, their officers, employees, agents, successors and all other persons acting in concert or participation with them, to take such actions as may be necessary to prevent the recurrence of such unlawful conduct in the future, including but not limited to, providing RLUIPA and RFRA training to Defendants' personnel, establishing procedures to address complaints of RLUIPA and RFRA violations, and maintaining records and submitting reports relating to RLUIPA and RRFA compliance.

146. Plaintiff seeks an Order that all Defendants pay to Plaintiff reasonable attorneys' fees and costs pursuant to 42 U.S.C. §1988 and the attorney fee provision of the Religious Land Use and Institutionalized Persons Act of 2000.

147. Plaintiff seeks an award of $1 for nominal damages for violation of its constitutional rights and prays that the Court issue the requested injunctive relief without a condition of bond or other security being required of Plaintiff.

148. Plaintiff seeks an Order for such other relief as the Court deems just and equitable in these premises.

## JURY DEMAND

Plaintiff requests a trial by jury on all issues so triable.

Respectfully submitted,

**LAW OFFICES OF JONATHAN R. WHITEHEAD, LLC**

/s/ Jonathan R. Whitehead
Jonathan R. Whitehead, Mo. 56848
229 S.E. Douglas St., Ste. 210
Lee's Summit, Mo 64063
816.398.8305 - Phone
816.278.9131 – Fax
Jon@WhiteheadLawLLC.com
**ATTORNEY FOR PLAINTIFF ABUNDANT LIFE BAPTIST CHURCH OF LEE'S SUMMIT, MISSOURI**

## VERIFICATION

I DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING VERIFIED COMPLAINT HAS BEEN EXAMINED BY ME AND THAT THE FACTUAL ALLEGATIONS THEREIN ARE TRUE TO THE

30

BEST OF MY INFORMATION, KNOWLEDGE AND BELIEF.

PHIL HOPPER, PASTOR,
ABUNDANT LIFE BAPTIST CHURCH
OF LEE'S SUMMIT, MISSOURI

DATE:  5/7/2020